## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CHERYL C. BRADLEY, individually and on : 
behalf of all persons similarly situated,    :   **Civil Action No.:**
                                    :
           **Plaintiff,**         :    **Collective Action Complaint**
                                    :
      **v.**                     :    **Jury Trial Demanded**
                                    :
**VOX MEDIA, INC., d/b/a SB NATION**    :
                                    :
       **Defendant.**          :

## COLLECTIVE ACTION COMPLAINT

Plaintiff Cheryl C. Bradley ("Plaintiff"), through her undersigned counsel, individually and on behalf of all persons similarly situated, files this Collective Action Complaint against Defendant Vox Media, Inc., d/b/a SB Nation ("Defendant" or "Vox"), seeking all available relief under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* ("FLSA").

## JURISDICTION AND VENUE

1.　　Jurisdiction over Plaintiff's FLSA claims is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

2.　　Venue in this Court is proper pursuant to 28 U.S.C. § 1391. Defendant is headquartered in this District. The events giving rise to Plaintiff's claims occurred within this District, and Defendants conduct business in this District.

## PARTIES

3.　　Plaintiff Cheryl C. Bradley ("Plaintiff") is an individual currently residing in Centennial, Colorado. She was employed by Defendant as a Site Manager (otherwise known as a Managing Editor) from on or about June 2013 through on or about February 2015, and, pursuant to 29 U.S.C. § 216(b), has consented in writing to being a Plaintiff in this action. *See*

Ex. A.

4.      Defendant Vox Media, Inc., d/b/a SB Nation ("Vox") is a Delaware corporation

headquartered in the District of Columbia, and operating nationwide.  Vox maintains hundreds

sports websites affiliated with its business division known as "SB Nation."

5.      Defendant employs individuals engaged in commerce or in the production of

goods for commerce and/or handling, selling, or otherwise working on goods or materials that

have been moved in or produced in commerce by any person, as required by 29 U.S.C. §§ 206-

207.

6.      Defendant's annual gross volume of business exceeds $500,000.

## CLASS DEFINITIONS

7.      Plaintiff brings Counts I and II of this lawsuit pursuant to the FLSA, 29 U.S.C. §

216(b) as a collective action on behalf of herself and the following class of potential opt-in

litigants:

> All current or former Site Managers, Managing Editors and similar employees
> who performed work in the United States for Vox Media, Inc. in its SB Nation
> business division within the past three years  (the "FLSA Class").

8.      Plaintiff reserves the right to redefine the FLSA Class prior to notice or class

certification, and thereafter, as necessary.

## FACTS

9.      Defendant Vox, is a media corporation which operates and maintains media

websites, including approximately 319 sports websites affiliated with its business division known

as SB Nation.

10.      On August 14 and 15, 2017, the sports website Deadspin published a pair of

articles concerning Vox's treatment of its Site Managers and other content creator employees,

which included negative feedback from many such employees concerning Vox's pay practices.[1]

11.     On or about June 1, 2013, Plaintiff signed a "Blogger Agreement," attached hereto as Exhibit B, which to the extent lawful, governed the terms of the relationship between Plaintiff and Vox.

12.     From approximately June 2013 through February 2015, Plaintiff served as a Site Manager for Vox's "Mile High Hockey," website.

13.     Plaintiff's Blogger Agreement obligated Plaintiff to create content to place on Vox's SB Nation website known Mile High Hockey.[2]  Blogger Agreement at A-1.

14.     Mile High Hockey is SB Nation's website for the Colorado Avalanche, a professional ice hockey team, which is part of the National Hockey League ("NHL").

15.     During Plaintiff's employment at Vox, among other duties, Plaintiff regularly published approximately five or six articles per week (more during peak times), managed other writers (including by relaying Vox directives from NHL League Manager Travis Hughes), edited and approved new writers' articles, monitored search engine optimization data, and managed comment sections and Fan Post articles on the Mile High Hockey website.

16.     While Site Manager, Plaintiff regularly worked thirty (30) to forty (40) hours per week, and was compensated at a rate of $125 per month.

17.     During peak times, such as near NHL trade, draft and free-agency deadlines, or when Plaintiff was understaffed, Plaintiff worked in excess of forty (40) hours per week, and as

---

[1] See "How SB Nation Profits Off an Army of Exploited Workers," available at: http://deadspin.com/how-sb-nation-profits-off-an-army-of-exploited-workers-1797653841 (last accessed August 25, 2017); "SB Nation Bosses, Current And Former Workers Discuss Pay, Management, And More In Emails And Leaked Memos," available at: http://deadspin.com/sb-nation-bosses-current-and-former-workers-discuss-pa-1797868635 (last accessed August 25, 2017).
[2] https://www.milehighhockey.com/ (last accessed 8/31/2017)

3

much as fifty (50) hours per week.

## EMPLOYMENT RELATIONSHIP

18.     Federal courts weigh several non-exclusive factors in order to determine whether, as a matter of "economic reality," an employment relationship exists. *See, e.g., Morrison v. Int'l Programs Consortium, Inc.*, 253 F.3d 5, 11 (D.C. Cir. 2001) ("we ask 'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" (Citation omitted; quoting *Henthorn v. Department of Navy*, 29 F.3d 682, 684 (D.C.Cir.1994)). "Depending on the circumstances, the inquiry should not be limited to these factors." *Ivanov v. Sunset Pools Mgmt. Inc.*, 567 F. Supp. 2d 189, 194 (D.D.C. 2008).

19.     In *Donovan v. DialAmerica Mktg., Inc.*, 757 F.2d 1376, 1382 (3d Cir. 1985) the Court of Appeals for the Third Circuit considered the following factors:

> 1) the degree of the alleged employer's right to control the manner in which the work is to be performed;
> 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
> 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers;
> 4) whether the service rendered requires a special skill;
> 5) the degree of permanence of the working relationship;
> 6) whether the service rendered is an integral part of the alleged employer's business.

### *Vox Had the Power to Hire and Fire Employees*

20.     Vox, per League Manager Travis Hughes, interviewed Plaintiff for employment as Site Manager for Denver Cutthroats. Mr. Hughes hired Plaintiff as Site Manager.

21.     On one occasion on or about February 2015, a staff writer for Mile High Hockey wrote an article which expressed the opinion that Vox's target audience on their sports sites (i.e.,

4

SB Nation) was men.   Before even consulting Plaintiff, NHL League Manager Hughes immediately deleted the post and banned the staff writer from SB Nation.

22.    Plaintiff later defended the staff writer to Mr. Hughes.  Less than one week later, Hughes fired Plaintiff from her position as Site Manager under false pretexts, revoking all access to the Mile High Hockey website.

### *Vox Supervised and Controlled Plaintiff's Work Schedules and*
### *Conditions of Employment*

23.    Vox required Plaintiff, whether personally or through her supervision of staff writers, to cover each of the Colorado Avalanche's games, and "post a post-game/event commentary/recap, ideally immediately following the completion of any game/event, but in all cases within six (6) hours of the end of each game/event (including pre-season and post-season), or no later than 9 a.m. Eastern Time the morning following the game/event, whichever is earlier."  Blogger Agreement at A-1.

24.    Plaintiff frequently personally wrote recaps and previews for the Avalanche's games.

25.    Vox maintained control over the manner in which Plaintiff performed her services.

26.    Despite the fact that the Blogger Agreement purported to allow Plaintiff "editorial control over the Work Product," Vox maintained complete authority to "edit any Work Product, add content to the Site, and/or take down any Work Product or the Site in its entirety, within [its] reasonable business judgment."  Blogger Agreement at ¶ 3(d).

27.    On occasion, Vox actually exercised its control to edit the work product of Site Managers, for example when content was deemed to be controversial.

28.    Vox retained "exclusive control and decision-making authority regarding any and all revenue-generating opportunities with respect to the Site." Blogger Agreement at ¶ 3(e).

29.    For purposes of enhancing SB Nation's web search rankings, and therefore its advertising revenue, Plaintiff was required to add certain search terms to her articles, title articles in a certain way, and write at least 150 characters in each article.

30.    While employed and for six months thereafter, Plaintiff was <u>prohibited</u> from providing writing or editing services to SB Nation's prime competitors, Bleacher Report and ESPN. Blogger Agreement at ¶ 7.

31.    On an ongoing basis, as a Site Manager at SB Nation, Vox required Plaintiff to watch training videos.

<u>*Vox Determined Plaintiff's Rate and Method of Payment;*</u>

<u>*Plaintiff Had No Opportunity for Profit or Loss*</u>

32.    During her employment within SB Nation as a Site Manager, Plaintiff possessed no opportunity for profit or for loss, but rather was paid a flat $125 per month regardless of Vox's profitability or how many hours she worked.

33.    No matter how many articles Plaintiff created for SB Nation or how high quality those articles were, Plaintiff would only receive a low set monthly compensation. Blogger Agreement at A-2.

34.    Plaintiff assigned to Vox, "all rights, title, and interest in and to any work product [he] created...including all copyrights, trademarks and other intellectual property rights embodied therein." Blogger Agreement at ¶ 3(b).

35.    Plaintiff did not share in Vox's advertising revenue.

36.    Vox did not allow Plaintiff to advertise her brand or her content.

37.    When Plaintiff received inquiries for advertising on Mile High Hockey, she was required to by Vox, and did, refer the inquiries to her League Manager.

### *Plaintiff's Investment of Equipment or Materials*

38.    Plaintiff was not required to invest in equipment or materials with respect to her employment at Vox.  Plaintiff merely used her existing home computers and smart phone to perform services for Vox.

### *Plaintiff's Services Required No Special Skill*

39.    Plaintiff's services required no special skill.  For example, no specific academic qualifications were required to be a Site Manager, much less a college degree.  No specific professional experience was required of Plaintiff.

### *The Degree of Permanence of the Relationship*

40.    Plaintiff's employment with Vox was in the nature of a permanent relationship. Plaintiff signed successive annual Blogger Agreements and regularly worked 30-40 hours a week or more for Vox's SB Nation.

### *Plaintiff's Services Were An Integral Part of Vox's Business*

41.    Vox is a media company and its SB Nation division is in the business of sports media.  Vox and SB Nation's very business could not exist without the content created by its writers, including Plaintiff and other Site Managers. Indeed, the content created by its writers constitutes the entirety of the product offered by SB Nation.  Without the existence of such content, advertisers would not pay Vox to advertise on SB Nation sites.

42.    As a matter of economic reality, Plaintiff was dependent on Vox for income, and therefore was an employee of Vox.  Given the number of hours Plaintiff worked for Vox, the possibility of outside employment was heavily curtailed.

43.     Defendants do not maintain accurate records of the actual hours that Plaintiff and Class Members worked each workday and the total hours worked each workweek as required by the FLSA. *See* 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c) (requiring employers to maintain payroll records for three years and time sheets for two years, including the exact number of hours worked each day and each week).

44.     Vox knew or should have known that Plaintiff and Class Members were not exempt from the FLSA's minimum wage or overtime requirements.

45.     Vox is a sophisticated multi-national business worth approximately $1 Billion. Vox has access to knowledgeable human resource specialists and competent labor counsel.

46.     Defendant has acted willfully and with reckless disregard of clearly applicable FLSA provisions by failing to compensate Plaintiff and the Classes with pay of at least $7.25 per hour, as required by 29 U.S.C. § 206(a).

47.     Defendant has acted willfully and with reckless disregard of clearly applicable FLSA provisions by failing to compensate Plaintiff and the Classes for all hours worked in excess of forty (40) during the workweek at a rate of not less than one and one half (1.5) times the minimum wage, as required by 29 U.S.C. §§ 206(a), 207(a).

## COLLECTIVE ACTION ALLEGATIONS

48.     Plaintiff brings this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of the Classes defined above.

49.     Plaintiff desires to pursue her claims on behalf of herself and any individuals who opt-in to this action pursuant to 29 U.S.C. § 216(b).

50.     Plaintiff and the FLSA Class are "similarly situated," as that term is used in 29 U.S.C. § 216(b), because, *inter alia*, all such individuals worked pursuant to Vox's previously

described common pay practices and, as a result of such practices, were not paid the full and legally mandated overtime premium for hours worked over forty (40) during the workweek. Resolution of this action requires inquiry into common facts, including, *inter alia*, Defendants' common compensation, timekeeping, and payroll practices.

51.     Specifically, Vox paid Plaintiff and the FLSA Class on a monthly basis, but failed to pay Plaintiff and the FLSA Class at least the minimum wage required by 29 U.S.C. § 206(a), and failed to pay overtime at time and a half (1 ½) the employee's regular rate (not to fall below $7.25 per hour) as required by the FLSA for all hours worked in excess of forty (40) per workweek.

52.     The similarly situated employees are known to Vox, are readily identifiable, and may be located through Vox business and human resource records.

53.     Vox employs many FLSA Class Members. These similarly situated employees may be readily notified of this action through direct U.S. mail and/or other appropriate means, and allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for overtime compensation, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.

**COUNT I**
**Minimum Wage Violation, 29 U.S.C. § 206(a)**
**(On Behalf of the FLSA Class)**

54.     All previous paragraphs are incorporated as though fully set forth herein.

55.     The FLSA requires that covered employees be compensated for all hours worked at a rate of not less than $7.25 per hour. *See* 29 U.S.C. § 206(a)(1).

56.     Vox is subject to the wage requirements of the FLSA because Vox is an "employer" under 29 U.S.C. § 203(d).

57.     At all relevant times, Vox is an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.

58.     During all relevant times, Plaintiffs and the FLSA Class are covered employees entitled to the above-described FLSA's protections. *See* 29 U.S.C. § 203(e).

59.     Plaintiff and the FLSA Class are not exempt from the requirements of the FLSA. Plaintiff and the FLSA Class are entitled to be paid for all hours worked at a rate of not less than $7.25 per hour, pursuant to 29 U.S.C. § 206(a)(1).

60.     Vox's compensation scheme applicable to Plaintiff and the FLSA Class failed to comply with 29 U.S.C. § 206(a)(1).

61.     Vox knowingly failed to compensate Plaintiff and the FLSA Class for all hours worked at a rate of not less than $7.25 per hour, in violation of 29 U.S.C. § 206(a)(1).

62.     Vox also failed to make, keep, and preserve records with respect to Plaintiff and the FLSA Class sufficient to determine their wages, hours, and other conditions of employment in violation of the FLSA.  29 U.S.C. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c).

63.     In violating the FLSA, Vox acted willfully and with reckless disregard of clearly applicable FLSA provisions.

64.     Pursuant to 29 U.S.C. § 216(b), employers such as Vox, who intentionally fail to pay an employee wages in conformance with the FLSA shall be liable to the employee for unpaid wages, liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

## COUNT II
### Overtime Violation, 29 U.S.C. § 207(a)
### (On Behalf of the FLSA Class)

65.     All previous paragraphs are incorporated as though fully set forth herein.

66.     The FLSA requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1 ½) times the regular rate at which he is employed, not to fall below 1 ½ times the minimum wage. *See* 29 U.S.C. §§ 206(a)(1), 207(a)(1).

67.     Vox is subject to the wage requirements of the FLSA because Vox is an "employer" under 29 U.S.C. § 203(d).

68.     At all relevant times, Vox is an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.

69.     During all relevant times, Plaintiff and the FLSA Class are covered employees entitled to the above-described FLSA's protections. *See* 29 U.S.C. § 203(e).

70.     Plaintiff and the FLSA Class are not exempt from the requirements of the FLSA. Plaintiff and the FLSA Class are entitled to be paid overtime compensation for all hours worked over forty (40) in a workweek pursuant, not to fall below 1 ½ times the minimum wage. *See* 29 U.S.C. §§ 206(a)(1), 207(a)(1).

71.     Defendants' compensation scheme applicable to Plaintiff and the FLSA Class failed to comply with 29 U.S.C. §§ 206(a)(1), 207(a)(1).

72.     Vox knowingly failed to compensate Plaintiff and the FLSA Class at a rate of one and one-half (1 ½) times their regular hourly wage for hours worked in excess of forty (40) hours per week, not to fall below 1 ½ times the minimum wage, in violation of 29 U.S.C. §§ 206(a)(1),

207(a)(1).

73.     Vox also failed to make, keep, and preserve records with respect to Plaintiff and the FLSA Class sufficient to determine their wages, hours, and other conditions of employment in violation of the FLSA.  29 U.S.C. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c).

74.     In violating the FLSA, Vox acted willfully and with reckless disregard of clearly applicable FLSA provisions.

75.     Pursuant to 29 U.S.C. § 216(b), employers such as Vox, who intentionally fail to pay an employee wages in conformance with the FLSA shall be liable to the employee for unpaid wages, liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks the following relief on behalf of herself and all others similarly situated:

a.  An order permitting this litigation to proceed as an FLSA collective action pursuant to 29 U.S.C. § 216(b);

b.  Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential FLSA Class members;

c.  Back pay damages (including unpaid minimum wages and overtime compensation) and prejudgment interest to the fullest extent permitted under the law;

d.  Liquidated damages to the fullest extent permitted under the law;

e.  Litigation costs, expenses, and attorneys' fees to the fullest extent permitted under the law; and

f.  Such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury for all issues of fact.

Dated:   September 1, 2017                     Respectfully Submitted,

Judith Sznyter (Bar No. 982325)
Stephen J. Holroyd*
Marc. L. Gelman*
James E. Goodley*
JENNINGS SIGMOND, P.C.
1835 Market Street, Suite 2800
Philadelphia, PA 19103
Telephone: (215) 351-0641/0670/0623/0613
jsznyter@jslex.com
sholroyd@jslex.com
mgelman@jslex.com
jgoodley@jslex.com

*Attorneys for Plaintiff and the FLSA Class*

*\* Application for Admission to this Court to be Filed*