UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
**CHERYL C. BRADLEY**, *et al.*,    )
                                    )
      **Plaintiffs**,                 )
                                    )
    v.                            )    Civil Action No. 17-1791 (RMC)
                                    )
**VOX MEDIA, INC. d/b/a SB NATION**,)
                                    )
      **Defendant**.                 )
_____ )

**MEMORANDUM OPINION**

How much employer control is required for an independent contractor to be considered an employee under the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 201 *et seq.*? That is the question raised by a purported class of employees who provide blogging and supervision services to Vox Media, Inc. (Vox) on its various sports blogs. Before the Court may address that question, Vox moves for partial dismissal to limit Plaintiffs' claims to the two-year, rather than three-year, statute of limitations provided by the FLSA. Vox argues that Plaintiffs have failed to allege adequately its violation was willful, as required to fall under the three-year statute of limitations. The Court finds Plaintiffs' allegations sufficient to allege a plausible claim for relief and will deny the motion.

**I.    BACKGROUND**

Vox is a media corporation that maintains and operates approximately 319 sports websites through its business division, SB Nation. First Amended Collective Action Complaint (Am. Compl.) [Dkt. 16] ¶ 11. Each website is maintained by a Site Manager, who is in turn supervised by a League Manager. *Id.* ¶ 17. Vox manages its Site Managers through Blogger Agreements and direct supervision by League Managers. *Id.* ¶¶ 13, 70-73. Each Blogger

1

Agreement outlines when and how often Site Managers must create new content, specifies that Vox maintains the authority to edit or remove such content, and includes a non-compete clause. *Id.* ¶¶ 53-59. When a position becomes available, Vox posts a short description to its website that includes a list of requirements and responsibilities, as well as details on how to apply. *Id.* ¶ 50. It advertises for all its paid positions in the same manner. *Id.*

Plaintiff Cheryl Bradley was a Site Manager for Vox's website, *Mile High Hockey*, from June 2013 until February 2015. *Id.* ¶ 14. Her relationship with Vox was governed by a Blogger Agreement that she signed on June 1, 2013. *Id.* ¶ 13; *see also* Ex. 1, Am. Compl., Bradley Blogger Agreement [Dkt. 16-2]. Ms. Bradley was interviewed, and later managed, by League Manager Travis Hughes. Am. Compl. ¶ 44. She was required to watch games featuring the Colorado Avalanche, a professional ice hockey team, and then to publish five to six articles per week, manage other writers, edit and approve articles by those writers, monitor search engine optimization, manage *Mile High Hockey*'s comments section and social media accounts, and live-Tweet games and practices. *Id.* ¶¶ 16, 18-19. Ms. Bradley was paid $125 per month. *Id.* ¶ 20. She regularly worked 30-40 hours per week, and up to 50 hours per week during peak times or when she was understaffed. *Id.* ¶¶ 20-21. In late 2013, Ms. Bradley complained to her League Manager that her wages were inadequate and was told that wages were dependent on team site traffic. *Id.* ¶ 106. Even though she increased *Mile High Hockey*'s site traffic, her pay never increased. *Id.* Ms. Bradley was fired in February 2015. *Id.* ¶¶ 45-46.

Plaintiff John Wakefield was a Site Manager for Vox's website, *Through it All Together*, from December 2015 until May 2017. *Id.* ¶ 23. Mr. Wakefield applied for the position on December 10, 2015 and was hired by Soccer League Manager Jeremiah Oshan. *Id.* ¶ 47. His relationship with Vox was governed by a Blogger Agreement that he signed on

January 1, 2016. *Id.* ¶ 22; *see also* Ex. 2, Am. Compl., Wakefield Blogger Agreement [Dkt. 16-3]. He was required to watch or listen to games featuring the Leeds United Football Club, an English professional soccer team, and publish one to three articles per week, manage other writers, edit and approve articles, monitor search engine optimization, and manage *Through It All Together*'s comments section and Twitter account. Am. Compl. ¶¶ 27-29. Mr. Wakefield was initially paid $50 per month; his pay was later increased to $75 per month. *Id.* ¶ 30. He regularly worked 30-40 hours per week, and up to 60 hours per week during peak times. *Id.* ¶¶ 30-31.

Plaintiff Maija Varda is currently the Site Manager for Vox's website, *Twinkie Town*. *Id.* ¶ 33. Ms. Varda applied for the position of Site Manager in April 2016 after seeing a job posting and was interviewed and hired by Major League Baseball League Manager Justin Bopp. *Id.* ¶ 49. Her relationship with Vox is governed by a Blogger agreement that she signed on May 1, 2016. *Id.* ¶ 32; *see also* Ex. 3, Am. Compl., Varda Blogger Agreement [Dkt. 16-4]. She is required to write daily interest articles about the Minnesota Twins, a professional baseball team, report breaking news, recruit and manage staff writers, and manage *Twinkie Town*'s social media accounts. Am. Compl. ¶¶ 35-38. She is paid $400 per month. *Id.* ¶ 40. She regularly works 30 to 40 hours per week, and up to 50 hours per week during peak times or when she is understaffed. *Id.* ¶¶ 40-41.

On September 1, 2017, Ms. Bradley filed a Collective Action Complaint against Vox, alleging a violation of the minimum wage and overtime requirements of the FLSA. Collective Action Compl. [Dkt. 1]. An Amended Complaint adding Mr. Wakefield and Ms. Varda as named plaintiffs was filed October 23, 2017. *See* Am. Compl. Vox moved for partial dismissal of any claims outside the standard two-year statute of limitations on November 6, 2017

and at the same time moved for the Court to take judicial notice of four exhibits attached to the partial motion to dismiss. Plaintiffs opposed and Vox replied. Both motions are ripe for review.[1]

The Court has jurisdiction under 29 U.S.C. § 216(b) of the FLSA and 28 U.S.C. § 1331. *See* 29 U.S.C. § 216(b) ("An action to recover the liability prescribed in the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."); 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Venue is proper in the United States District Court for the District of Columbia because Defendant Vox Media, Inc. is headquartered in the District and the events giving rise to Plaintiffs' claims also occurred in the District. *See* 28 U.S.C. § 1391(b)(1), (2).

## II.　　LEGAL STANDARD

### A. Judicial Notice

In ruling on a 12(b)(6) motion to dismiss, a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice. *See Abhe v. Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007). The court has the discretion to take judicial notice of "historical, political, or statistical facts, or any other facts that are verifiable with certainty."

---

[1] *See* Def. Vox. Media, Inc.'s Partial Mot. to Dismiss Pls.' First Am. Compl. (Mot. to Dismiss) [Dkt. 21]; Def. Vox Media, Inc.'s Mot. for Judicial Notice [Dkt. 22]; Mem. of Law in Opp'n to Def.'s Mot. to Dismiss Pls.' First Am. Compl. [Dkt. 24]; Pls.' Mem. of Law in Opp'n to Def.'s Mot. for Judicial Notice [Dkt. 25]; Reply Mem. of Law in Supp. of Def. Vox Media, Inc.'s Partial Mot. to Dismiss Pls.' First Am. Compl. [Dkt. 26]; Reply in Supp. of Def. Vox Media, Inc.'s Mot. for Judicial Review (Notice Reply) [Dkt. 27].

4

*Mintz v. FDIC*, 729 F. Supp. 2d 276, 278 n.2 (D.D.C. 2010). The Federal Rules of Evidence require that the court only judicially notice a fact when it is "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(c)(2). The facts to be noticed must also be relevant. *Whiting v. AARP*, 637 F.3d 355, 430 (D.C. Cir. 2011) (declining to take judicial notice of facts that are "irrelevant to disposition of the motion to dismiss, which turns on the adequacy of the well-pleaded factual allegations in the complaint").

### B. Motion to Dismiss for Failure to State a Claim

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face. Fed. R. Civ. P. 12(b)(6). A complaint must be sufficient "to give a defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Although a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face." *Id*. at 570. A court must treat the complaint's factual allegations as true, "even if doubtful in fact." *Id.* at 555. But a court need not accept as true legal conclusions set forth in a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III. ANALYSIS

### A. Judicial Notice

Vox asks the Court to take judicial notice of Exhibits 2-5 to their Motion to Dismiss. Exhibits 2-4 are screenshots from Mses. Bradley and Varda's and opt-in Plaintiff Jacob Pavorsky's LinkedIn profiles, respectively. *See* Exs. 2-4, Mot. to Dismiss [Dkts. 21-3, 21-4, 21-5]. Exhibit 5 is a screenshot of Ms. Bradley's comments on the *Mile High Hockey* website. *See* Ex. 5, Mot. to Dismiss [Dkt. 21-6].

Vox argues that these exhibits are relevant to its defense that Vox did not willfully violate the FLSA because the exhibits show that Plaintiffs did not consider themselves to be employees. Vox adds that the exhibits are relevant to "one key factor of the independent contractor analysis (whether the alleged employee simultaneously worked for others)." Notice Reply at 2. Plaintiffs respond that the exhibits are irrelevant to ruling on the Vox motion to dismiss because they have no bearing on whether Plaintiffs have adequately alleged willfulness.

In considering the motion to dismiss, the Court is concerned with whether these Plaintiffs have successfully stated "a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). It is premature to consider whether Plaintiffs subjectively believed they were employees of Vox. The Court also realizes that LinkedIn profiles generally consist of self-reported employment information. However, at this point in the litigation, the Court cannot find that the accuracy of the information contained in these screen shots can be "verifiable with certainty." *See Mintz*, 729 F. Supp. 2d at 278 n.2 (taking notice of the relationship between two different third parties because it was a "highly relevant and easily verifiable fact"). The Court declines to take judicial notice of Exhibits 2-5.

**B. Motion to Dismiss**

Vox moves to dismiss all of Ms. Bradley's claims and all claims of the other Plaintiffs and putative class members that are more than two years old. Vox argues that the Plaintiffs' claims are limited by the traditional two-year FLSA statute of limitations and not the three-year FLSA limitations period for willful violations because Plaintiffs have not adequately pleaded a willful violation by Vox. Plaintiffs argue that they have adequately alleged a willful violation because they allege that senior executives at Vox were formerly senior executives at America Online, Inc. (AOL) when a similar lawsuit was pending against AOL and that Vox received multiple complaints from employees regarding their inadequate wages but did nothing.

The FLSA states that a cause of action "may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). A violation is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988) (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 128 (1985)).

The Amended Complaint focuses on three executives at Vox Media to support its allegation of willfulness: James Bankoff, Chief Executive Officer; Marty Moe, President; and Lauren Fisher, General Counsel and Chief Legal Officer. Am. Compl. ¶¶ 82, 84, 87. The Amended Complaint alleges that these three executives were involved in the decision to classify Plaintiffs as independent contractors and not pay them as the FLSA requires employees to be paid. *Id.* ¶ 105. It is alleged that each executive was previously employed by AOL: Mr.

Bankoff from 2002 to 2011; Mr. Moe from 2001 to 2010; and Ms. Fisher from 2001 to 2007. *Id.* ¶¶ 83, 85, 88. Further, it is alleged that AOL was defending against a class action lawsuit at that time, as well as an investigation by the Department of Labor (DOL) concerning its failure to pay AOL "Community Leaders" as employees. *Id.* ¶¶ 89-99; *see also Hallissey v. America Online, Inc.*, No. 99-3785, 2008 WL 465112 (S.D.N.Y. Feb. 19, 2008) (conditionally certifying class). Plaintiffs further allege that "[d]uring their tenure at AOL, Bankoff, Moe and Fisher were well aware of the *Hallissey* case and the USDOL investigation." Am. Compl. ¶ 99. Finally, Plaintiffs allege that Ms. Bradley "complained to her League Manager Travis Hughes that she was paid inadequate wages" and "[u]pon information and belief, Vox received complaints from other Site Managers concerning Vox's pay practices." *Id.* ¶¶ 106-07. Plaintiffs argue the combination of prior knowledge of the AOL litigation and complaints from employees of inadequate wages is sufficient to support their allegation that Vox "knew it was illegal to classify the FLSA Class Members as independent contractors and fail to ensure they were paid at least the minimum wage and overtime required by law." *Id.* ¶ 108.

Other judges in this district have considered the adequacy of allegations of willfulness under the FLSA. *See Galloway v. Chugach Gov't Servs., Inc.*, 199 F. Supp. 3d 145, 151-53 (D.D.C. 2016); *Wilson v. Hunam Inn, Inc.*, 126 F. Supp. 3d 1, 6-8 (D.D.C. 2015). *Galloway* found a complaint adequate to allege willfulness because it alleged that: (1) the employer was aware of its obligation to pay overtime to its employees and refused to do so; (2) employees were frequently forced to work through their meal breaks; (3) employees were not allowed to leave their work stations at the end of their shifts; (4) employees were not permitted to record extra time worked during meals or after their shifts; and (5) the payroll system would not accept entries that resulted in an employee working over 40 hours a week. 199 F. Supp. 3d at

8

151-53. *Galloway* focused on the state of mind pleading standard in Rule 9 and noted that "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id*. at 152 (quoting Fed. R. Civ. P. 9(b)). Taking the complaint allegations in the light most favorable to the plaintiffs, *Galloway* concluded that the factual allegations were sufficient to allege willfulness under the FLSA. *Id*. at 153.

The *Wilson* court similarly denied a defendant's motion to dismiss an allegation of willfulness. 126 F. Supp. 3d at 6-8. *Wilson* noted that courts disfavor a determination of willfulness on a motion to dismiss. *See id*. at 7 (citing *Hunter v. Sprint Corp.*, 453 F. Supp. 2d 44, 54 (D.D.C. 2006) ("[A] determination about the applicable statute of limitations cannot precede a determination that the employer is, in fact, liable."); *Acosta Colon v. Wyeth Pharm. Co.*, 363 F. Supp. 2d 24, 29 (D.P.R. 2005)). The *Wilson* plaintiff alleged that the defendant willfully developed an elaborate tipping scheme to take advantage of the "tipped employee" exemption under the FLSA. *See id*. The court found "it plausible on the facts alleged that [plaintiff] will be able to demonstrate a willful FLSA violation" and that "[d]iscovery on these allegations will inform the determination of whether or not these violations were willful." *Id*. at 7-8.

The allegations of willfulness in this case are not as concrete or specific as those in *Galloway* or *Wilson*; however, they are sufficient to raise a plausible right to relief under the three-year statute of limitations.[2] In evaluating a motion to dismiss, the Court must accept all

---

[2] After discovery, it is possible to decide an FLSA case on summary judgment, but the inquiry is so fact-intensive one is necessarily wary about so ruling on a motion to dismiss. *See, e.g.*, *Ayala v. Tito Contractors, Inc.*, 82 F. Supp. 3d 279, 286 (D.D.C. 2015) (finding that "[k]nowing that the FLSA applies and 'simply deciding not to comply' . . . is an example of a willful violation") (quoting *Wyland v. District of Columbia Gov't*, 728 F. Supp. 35, 37 (D.D.C. 1990)); *Gonda v. Donahoe*, 79 F. Supp. 3d 284, 306-07 (D.D.C. 2015) (finding on summary judgment that

9

well-pleaded facts in the Amended Complaint as true. After discovery, Vox may move for summary judgment on the issue of willfulness if the record supports it. For now, the Plaintiffs may attempt to discover evidence to support their allegations.

IV. CONCLUSION

For the foregoing reasons, the Court will deny Vox Media's Motion to Dismiss, Dkt. 21, and Motion to Take Judicial Notice, Dkt. 22. A memorializing Order accompanies this Memorandum Opinion.

Date: September 4, 2018

ROSEMARY M. COLLYER
United States District Judge

---

evidence of misclassified positions not held by plaintiff was insufficient to show defendant willfully misclassified plaintiff's position); *Levering v. District of Columbia*, 869 F. Supp. 24, 30 (D.D.C. 1994) (finding on summary judgment that evidence employer paid employees for more hours in prior years insufficient to show willfulness because of alternative explanations); *Harris v. District of Columbia*, 749 F. Supp. 301, 304 (D.D.C. 1990) (finding willfulness on summary judgment because the District was aware of overtime requirements due to substantially similar litigation with others and a letter from a plaintiff). *Cf. Escamilla v. Nuyen*, 227 F. Supp. 3d 37, 53 (D.D.C. 2017) (finding willfulness after a bench trial when defendant failed to consult with legal counsel or FLSA before setting wages).